LUIS LÓPEZ SANTOS, Petitioner, v. SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, FRANCISCO ESPINOSA ROBLEDO, JUDGE, Respondent; BIRD'S RESTAURANT, INC., Intervener.

No. O-67-157.     Decided October 16, 1970.

318

*Carmelo Ávila Medina* and *Roberto Ávila Rivera* for petitioner. *Francisco Ponsa Feliu* for intervener.

MR. JUSTICE MARTÍNEZ MUÑOZ delivered the opinion of the Court.

We agreed to review the order of the trial court considering petitioner Luis López Santos an executive of appellee Bird's Restaurant, Inc., and that therefore, the provisions of Act No. 379 of May 15, 1948, 29 L.P.R.A. §§ 271–278, fixing a maximum for the working day in Puerto Rico and providing for the payment of a double wage rate for the hours worked in excess of the legal working day,[1] are not applicable to him.

[1] Act No. 379 excludes for the first time "executives" from the provisions on regular and extra hours of work. As of May 15, 1948 the "executives", a term not defined, could not claim compensation for extra hours worked, except in two cases, to wit: (a) under the provisions of some mandatory decree promulgated before the effectiveness of said Act; or (b) as compensation for hours worked during a rest period under the provisions of Act No. 289 of April 9, 1946. *Piñán* v. *Mayagüez Sugar Co., Inc.*, 84 P.R.R. 86 (1961).

On August 18, 1961, Luis López Santos filed a complaint claiming $16,388 for extra hours allegedly worked for the defendant enterprise Bird's Restaurant, Inc., from November 3, 1949, until May 13, 1960, plus an equal amount as penalty, prosecuted under the procedure established by Act No. 10 of November 14, 1917, as amended.[2]

By an agreement of the parties and with the consent of the trial court, more than five years after the complaint was filed, defendant's special defense, in the sense that complainant was not entitled to the compensation requested since he was an "executive" in the enterprise, was heard at a preliminary hearing.

Luis López Santos began working for Bird's Restaurant on November 3, 1949, as busboy in a cafeteria at the Isla Grande airport with a salary of $12 a week. (Tr. Ev. Vol. 1, p. 4.) His duties were cleaning the cafeteria, doing dishes, the floors, and the wash basin (*Id.* p. 9). A year later in November 1950, he was employed as cashier in the enterprise with a salary of $17 a week (*Id.* p. 5). He worked as cashier until he came to occupy the position of "collector" which Erasto Ortiz had left vacant in 1952. At that time he was already earning a salary of $23 a week (*Id.* p. 5). On July 1, 1953, his salary was raised to $30 a week; on January 1, 1955, to $40 a week, which was the maximum wage he earned until May 13, 1960, date when he stopped working for defendant.

In defendant's restaurant business for which complainant worked, several persons, at least ten to twelve (*Id.* p. 22), discharged the position of cashier. This number came to fluctuate between 15 and 18 cashiers, who worked the eight

---

[2] Two months after the complaint was filed the "Act for Claims for Compensation for Work of 1961" went into effect, Act No. 2 of October 17, 32 L.P.R.A. §§ 3118–3132. This Court has held that even though Act No. 2 of October 17, 1961, repealed Act No. 10 of November 14, 1917, the first one is fundamentally the same as the one repealed. *Dorado Beach Corp.* v. *Superior Court*, 92 P.R.R. 594 (1965).

to ten cash registers in different shifts (*Id.* p. 21).

The controversy raised boils down, then, to consider whether or not complainant Luis López Santos was an executive of appellee Bird's Restaurant, Inc., under the intent of Act No. 379 of May 15, 1948. If he was, he cannot claim the extra hours, if any, worked for appellee. If he was an executive only during part of the time he worked for appellee enterprise, but was not so for another period, his claim shall have to be limited to the period during which he was not considered an "executive."

Act No. 379 of 1948 does not define the term "executive." It was not until January 15, 1952, that Regulations,[3] adopted by the Secretary of Labor defining the terms "executive," "administrator," and "professional," excluded from the term employee by § 19 of Act No. 379 (29 L.P.R.A. § 288), went into effect, *Piñán* v. *Mayagüez Sugar Co., Inc.*, 84 P.R.R. 86 (1954). In said regulations the term "executive" is defined in the following manner:

"(A) Any employee (1) whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof; and

"(2) who customarily and regularly directs the work of two or more other employees therein; or of a department or subdivision thereof; and

"(3) who has the authority to hire of [*sic*] fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion or any other change of status of other employees will be given special attention; and

---

[3] These regulations were approved under the authority of the powers vested on the Secretary of Labor by § 17 of Act No. 379 of May 15, 1948, and by § 4 of Act No. 15 of April 14, 1931. See 29 R.&R.P.R. § 286–1. Beginning January 15, 1960, new regulations went into effect, which alter some of the provisions of the former.

The Minimum Wage Board of Puerto Rico adopted similar regulations, Regulation No. 3 [13] of August 8, 1951. (It was subsequently revised in 1960.) See 29 R.&R.P.R. §§ 246C–6 to 246C–13 [246e–6 to 246e–13].

"(4) who customarily and regularly exercises discretionary powers; and

"(5) who does not devote over 20% of his workweek to activities not directly or intimately related to the performance of the work described in paragraph (A), Subsections (1) to (4) of this Article; *Provided,* that this Subsection (5) shall not apply in the case of an employee who is in the sole charge of an independent establishment or a physically separated branch establishment; or when he owns at least a 20% interest of the enterprise he works for; and

"(6) who is compensated for his services on a fixed basis (by day, week, fortnightly or longer periods) equivalent to a weekly salary of not less than $30 exclusive of board, lodging, or other facilities; or[4]

"(B) Any employee (1) whose work complies with the requirements of Paragraph (A), Subsections (1) and (2) of this Article; and

"(2) who is compensated for his services on a fixed basis (by day, week, fortnightly, or longer periods) equivalent to a weekly salary of not less than $100, exclusive of board, lodging, or other facilities."

■ As of January 15, 1952, the provisions of the Regulations of the Secretary of Labor should be used to determine whether or not a person should be classified as an "executive" for the purpose of salary claims. To determine the situation of a case prior to January 15, 1952, all the relevant factors— nature and functions of the employment—should be considered to evaluate whether or not the position of a person

---

[4] This part of the regulation was amended in the 1960 revision. Now it reads in the following manner:

"(vi) who is compensated for his services on a fixed basis (by day, week, fortnight or longer periods) equivalent to the weekly salary which results from multiplying by 60 the highest minimum rate per hour applicable by a law of the Commonwealth of Puerto Rico or by a mandatory decree of the Minimum Wage Board of Puerto Rico to the activities in connection with which he performs his duties as an executive, exclusive of board, lodging, or other facilities; Provided, however, That the weekly salary shall never be less than 35 dollars when said compensation computed in the manner already mentioned would result in or is less than this amount, or when there is no salary applicable by law or decree; or . . . ."

in an enterprise was that of an executive. *Morales* v. *Superior Court*, 84 P.R.R. 120, 122 (1961).

The Constitution of the Commonwealth of Puerto Rico in its Article II (Bill of Rights) § 16 provides:

"The right of every employee to choose his occupation freely and to resign therefrom is recognized, as is his right to equal pay for equal work, to a reasonable minimum salary, to protection against risks to his health or person in his work or employment, and *to an ordinary workday which shall not exceed eight hours. An employee may work in excess of this daily limit only if he is paid extra compensation* as provided by law, at a rate never less than one and one-half times the regular rate at which he is employed." (Italics ours.)

In said section and in other sections of our Constitution, as in the labor legislation approved in Puerto Rico, it has been the public policy to protect laborers in all the possible measures, creating thus an atmosphere of harmony in labor-management relations indispensable for the progress and welfare of every sector of the community. In *Municipality of Guaynabo* v. *Superior Court*, 97 P.R.R. 532, 538 (1969), we held that the "exclusion of municipal employees from the payment of double time for the hours worked in excess of the legal working day, as provided by Act No. 379 of May 15, 1948, does not have the scope of excluding them blindly from the benefit of the minimum compensation of one and one-half times which § 16 of Art. II of the Constitution provides for the working class." This is the reason why the exclusion of an employee from the benefits of labor law should be clear and it should be strictly construed. This implies that all the requirements for exclusion in the Regulations of the Secretary of Labor, which are joined by the conjunction "and" should be met, not one or some. This has already been decided by this Court in several cases. Thus, in *Piñán* v. *Mayagüez Sugar Co., Inc., supra* at p. 93, we held that: "We must bear in mind as to the definition of 'executive' of the above-men-

tioned regulation that *there must necessarily exist all the requirements mentioned therein.*" (Italics ours.) See *Morales* v. *Superior Court, supra* at p. 121; *Medina* v. *Unión Obreros Cervecería Corona,* 86 P.R.R. 609, 616 (1962); *Matos Veláz-quez* v. *Proctor Manufacturing Corp.,* 91 P.R.R. 44, 54 (1964); *Calderón* v. *Esso Standard Oil Co.,* 92 P.R.R. 124 (1954).

Because petitioner's situation was not the same in defendant's enterprise since he began to work in 1949 until he quit his work in 1960, it is indispensable to see in stages whether or not the former was an executive in different periods. For the purpose of analysis we shall divide the time worked by petitioner in four periods.

(1) From November 1949 until November 1950.

(2) From November 1950 until the date on which he came to occupy the position of "Collector cashier" which Erasto Ortiz left vacant.[5]

(3) From this last date in 1952 until the day before his salary was raised to $30 a week, June 30, 1953.

(4) From July 1, 1953, date on which he began earning $30 a week, until the day he left his job, May 13, 1960.

The Superior Court concluded that during the year comprised in the first period (November 1949–November 1950) complainant could not be classified as an executive. We agree, since during that year complainant was engaged in manual jobs, principally cleaning, and his salary was $12 a week.

On January 15, 1952, the Regulations of the Secretary of Labor, where the term "executive" is defined went into effect. As we previously indicated, all the requirements which are mentioned in said definition should exist so that complainant is excluded from the benefit of additional compensation for extra hours worked in excess of the legal working day. For

---

[5] From indications in the evidence it seems to be November 1952. However it should be clarified.

the period covered by the complaint prior to January 15, 1952, in absence of regulations, this Court has understood that all the relevant facts concerning the nature, characteristics, and functions of the employment should be considered. *Morales* v. *Superior Court, supra.* It is fair to use similar views to those of the Regulations to avoid that two cases be decided in a different way.

The trial court considered that complainant was an "executive" from 1950 on. We disagree. The evidence reveals that during the third period indicated, which began when he occupied the position of "collector" which Erasto Ortiz had left vacant, until June 30, 1953, date on which his salary was raised to $30 a week, complainant received a salary of only $23 a week. The Regulations required as one of the factors to consider a person an "executive":

"(6) who is compensated for his services on a fixed basis . . . equivalent to a weekly salary of not less than $30 . . . ."

Considering that complainant's humble salary during the third period was lower than the minimum required by the regulation we do not believe that it can be maintained that he was an executive employee during that period. On the other hand it would be somewhat strange to consider him an "executive" during the second period and not during the third. During the second period which comprises from November 1950 until the date he came into the position of "collector cashier," complainant occupied the position of cashier beginning with a salary of $17 a week. We cannot consider him either as an "executive employee" during this period, as it would entail the construction of the term "executive" in a more ample manner than the one contemplated in the Regulations. In *Sierra* v. *Mario Mercado e Hijos*, 81 P.R.R. 305, 313 (1959), we held that:

"Certainly it does not seem arbitrary or unreasonable to require, as a condition *sine qua non* for an employee to be an

'executive,' that he be compensated 'on a fixed basis equivalent to a weekly salary of not less than $30, exclusive of board, lodging, or other facilities."

On June 30, 1953, complainant's salary was raised to $30 a week. He was already working on that date as "Collector Cashier." The first requirement to determine whether an employee is an executive according to the Regulations. is that he is an employee

"(i) whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; . . . ."

When he began to occupy the position of "Collector Cashier" in the year 1952, complainant's principal duties were, among others, to provide the cashiers with change, balance the cash registers daily in the different shifts, make bank deposits, and assign shifts to the cashiers. On July 1, 1953, his salary was raised to $30 a week and on January 1, 1955, to $40 a week. This was the maximum salary he earned until he quit his employment with defendant. The evidence introduced by defendant reveals that the complainant, also, recommended raises in salaries for the cashiers, interviewed employees to fill vacancies, and watched over the discipline. The documentary evidence introduced by defendant reveals that the complainant's recommendations about raises in salary and to fill vacancies had been given the attention of the management on eight occasions during the decade in which complainant worked for defendant: on three occasions in the year 1956; three in 1957, and two in 1958. Defendant called him "Collector-Cashier" and complainant called himself "Cashier Supervisor." We do not doubt that one of complainant's principal duties since he substituted for Erasto Ortiz was to supervise at least eight to ten cashiers. Certainly it was one of the most important duties he discharged during that last period. But with the exception of calling the atten-

tion to a cashier about some disciplinary matter or of simple job routine, none of these duties involved the use of discretion. The frame of his attributes was narrowly delimited. He did not have any authority whatsoever to hire or fire personnel. Although he had certain authority over the other cashiers, such authority, by itself, does not place him within the definition of executive which the Regulations contemplate. One of the requirements to be considered an executive is that he does not devote over 20% of his time to activities which are not related with the ones which should exist in every case where it is determined that an employee should be classified as an "executive." Petitioner devoted a considerable part of his time to balance the cash registers, make bank deposits, and replace the cashiers during their lunch hours. Of the six requirements which must exist, at least three—the first, the fourth, and the fifth—do not exist in this case, and the requirement of a weekly compensation of $30 or more exists only as of July 1, 1953. Defendant argues that these duties should be considered as part of complainant's supervisory functions as they allowed him to appraise the cashiers' work. We agree that the work of balancing the cash registers could have the incidental effect of placing complainant in a position to make a better evaluation of the work performed by the cashiers. However this was only one of his duties. Complainant also made bank deposits and replaced the cashiers during lunch hours, activities which are not related with the list of requirements which should exist in every case where it is determined that an employee should be classified as an "executive." Neither the ones nor the other functions required from the complainant a greater education or ability. Considered as a whole it cannot be said that said functions justify the conclusion that complainant was an "executive" of the defendant enterprise. None of them required the use of his discretion, factor which should concur with the other factors to exclude him from the protection of the law. The purpose of the exclu-

sion of "executives" is to not include anyone who has any authority in the enterprise however small the latter may be.

The order appealed from granting the affirmative defense of defendant to the effect that complainant was an "executive" will be set aside and the record remanded to the trial court for further proceedings.

Mr. Chief Justice Negrón Fernández did not participate herein.

